UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BEXY G.,

        Plaintiff,

                                       Case No. 1:20-cv-10043
v.                                  Magistrate Judge Norah McCann King

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

        Defendant.

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Bexy G., who is proceeding without the assistance of counsel, for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On September 16, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since August 31, 2015. R. 121–22, 177–78, 221–32. The applications were denied initially and upon reconsideration. R.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

179–92, 197–202. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 203–07. Administrative Law Judge ("ALJ") Thomas Sanzi held a hearing on August 19, 2019, at which Plaintiff, who was represented by counsel at that time, testified, as did a vocational expert. R. 39–88. In a decision dated September 18, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 31, 2015, her alleged disability onset date, through the date of that decision. R. 21–33. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 9, 2020. R. 9–14.

Proceeding without the assistance of counsel,[2] Plaintiff timely filed this action pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 29, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On April 30, 2021, the case was reassigned to the undersigned. ECF No. 12. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[2] As reflected in the above recitation, Plaintiff was represented by counsel through at least part of the underlying administrative proceedings. *See also* R. 15–17 (letter from Office of Appellate Operations dated October 3, 2019, and addressed to Plaintiff's counsel), 210 (appointment of representative dated August 6, 2018), 337–38 (letter from Plaintiff's counsel addressed to the ALJ dated August 12, 2019).

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g),1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

Finally, as previously noted, Plaintiff is proceeding before the Court in this case without the assistance of counsel. Courts have a duty to liberally construe *pro se* litigants' filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 340 (3d Cir. 2011) ("Pro se pleadings are often submitted by individuals with limited skills and technical expertise in the law."). Despite this liberal construction, however, "unrepresented litigants are not

relieved from the rules of procedure and the requirements of substantive law." *Parkell v. Danberg*, 833 F.3d 313, 324 n.6 (3d Cir. 2016) (citations omitted); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (stating that *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "While a court must construe a pro se litigant's pleadings liberally, it need not act as [the litigant's] advocate." *United States v. Peppers*, 482 F. App'x 702, 704 (3d Cir. 2012).

### B.   Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§

404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 43 years old on her alleged disability onset date. R. 27, 32. She meets the insured status requirements of the Social Security Act through December 31, 2022. R. 23. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity throughout 2016. R. 23. The ALJ also noted that Plaintiff had worked for several months in 2017 and in 2018, but he found that these later periods of employment did not qualify as substantial gainful activity. *Id*. The ALJ further found that there had been a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity and stated that the remaining findings in the administrative decision addressed those period(s). *Id*.

At step two, the ALJ found that record established the following severe impairments: degenerative disc disease, osteoarthritis, rheumatoid arthritis, asthma, affective disorder, and post-traumatic stress disorder ("PTSD"). R. 24. The ALJ also found that Plaintiff's diagnosed hypertension, diabetes mellitus, and gastroesophageal reflux disease ("GERD") were not severe impairments. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–26.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 26–31. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a money counter, gambling cashier, domestic laundry worker, and garment sorter. R. 31–32.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 4,00 jobs as an addresser; approximately 55,000 jobs as a cutter and paster; approximately 43,000 jobs as a document preparer—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 32–33. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 31, 2015, through the date of the decision. R. 33.

Construing her filings liberally, *see Erickson*, 551 U.S. at 94, Plaintiff appears to seek remand of the action, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence; Plaintiff also appears to disagree with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Letter Brief,* ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly

applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 20.

## IV. DISCUSSION

### A. Sentence Six Remand

Plaintiff attaches to her letter brief two exhibits for the Court's consideration: (1) a letter from Robert Bishop, PMHNP-BC, dated July 6, 2021, *Plaintiff's Letter Brief*, ECF No. 16, PAGEID#861 ("Nurse Bishop's letter"), and (2) a five-page, fill-in-the-blank and check-the-box form entitled "Mental Residual Functional Capacity Questionnaire and Listings" completed by Nurse Bishop on July 6, 2020, *id.* at PAGEID##862–66 ("Nurse Bishop's MRFC").[4] As this information was not before the ALJ when he issued his decision on September 18, 2019, the Court construes Plaintiff's evidence proffer as a request for remand pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence. For the reasons that follow, Plaintiff's request is not well taken.

It is axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)."*Id.* at 593; *see also* 42 U.S.C. § 405(g) (providing, *inter alia*, that the court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which

---

[4] These documents also appear at ECF No. 15.

9

is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). Evidence is "new" if it is "not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 834 (3d Cir. 1984) (citations omitted). "To be material, there 'must be a reasonable probability that the new evidence would have changed the outcome' of the Commissioner's decision." *Miller v. Comm'r Soc. Sec.,* 732 F. App'x 162, 165–66 (3d Cir. 2018) (quoting *Beety-Monticelli v. Comm'r of Soc. Sec.,* 343 Fed.Appx. 743, 747 (3d Cir. 2009) and *Szubak*, 745 F.2d at 833). Finally, a finding of "good cause" "requires 'some justification for the failure to acquire and present such evidence to the [Commissioner].'" *Szubak*, 745 F.2d at 833 (quoting *Brown v. Schweiker*, 557 F. Supp. 190, 192 (M.D. Fla. 1983)).

 In the case presently before the Court, the evidence proffered by Plaintiff is new and not simply cumulative of existing evidence in the record. *See* Nurse Bishop's letter, Nurse Bishop's MRFC; *see also Szubak*, 745 F.2d at 834. However, the Court cannot conclude that this new evidence is material. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 F.2d at 833. In this case, as previously noted, the ALJ determined that Plaintiff was not disabled during the period extending from Plaintiff's alleged disability onset date to the date on which his decision issued, *i.e.*, September 18, 2019. R. 21–33. Nurse Bishop's letter and Nurse Bishop's MRFC, dated July 6, 2021, and July 19, 2020, respectively, are dated well after the issuance of the ALJ's decision. *See Mathews*, 239 F.3d at 592; *Pierce v. Comm'r of Soc. Sec.*, No. CV 18-45-E, 2019 WL 1386058, at *1 (W.D. Pa. Mar. 27, 2019) ("However, all of these records clearly postdate the ALJ's decision and are therefore not material, since they do not relate

to the relevant time period.") (citations omitted); *Fegley v. Colvin*, 2015 WL 1636045, at *3 (M.D. Pa. April 8, 2015)("Courts in this circuit have consistently found that similar postdated evidence fails to meet the materiality standard, as it concerns a time period after that considered by the ALJ, and the Court is not persuaded by Plaintiff's arguments to the contrary.") (collecting cases). Furthermore, the Court cannot conclude that either exhibit relates back to the relevant period. Nurse Bishop's letter—dated almost two years after the ALJ issued his decision on September 18, 2019—states that Plaintiff is under his psychiatric care and that she "is unable to work at this point in time." *Id.* at PAGEID#861. Nurse Bishop's MRFC reflects his assessment of Plaintiff's mental RFC for the period February 27, 2020, to July 19, 2020. *Id.* at PAGEID#862. In response to the question, "What is the earliest date that the description of symptoms and limitations in this form applies?" Nurse Bishop wrote, "Last Appt on 7/10/20." *Id.* at PAGEID#866 (emphasis in the original). It therefore appears that even this assessment and the opinions expressed by Nurse Bishop in this document relate to a period that post-dated the ALJ's decision by almost one year. *See Pierce*, 2019 WL 1386058, at *1 (finding immaterial an opinion "from over a year and a half after the ALJ's decision" where "nothing in the opinion indicates that it was meant to refer back to the relevant time frame. Indeed, while Dr. Macielak says he began treating with Plaintiff in January of 2016, there are no treatment records until after the relevant period"); *id.* ("It is possible that Plaintiff's condition has deteriorated since the time of the ALJ's decision, but that does not warrant a new evidence remand. . . . If Plaintiff believes that his condition has significantly worsened since March 2, 2016, *his remedy is to file a new application for that new time frame*.") (emphasis added).

      Even assuming for the sake of discussion that Nurse Bishop's letter and Nurse Bishop's MRFC were material, Plaintiff has also failed to carry her burden of showing good cause for her

failure to present this or equivalent evidence to the ALJ. The United States Court of Appeals for the Third Circuit has found that the good cause requirement associated with a sentence six remand request seeks to stop an "end-run method of appealing an adverse ruling by the [Commissioner]." *Szubak*, 745 F.2d at 834. *See also Lyons v. Berryhill*, No. CV 18-1106, 2019 WL 4094701, at *1 (W.D. Pa. Aug. 29, 2019) (quoting *Glover v. Comm'r of Soc. Sec.*, No. 1:09-cv-520, 2010 WL 2671291, at *5 (W.D. Mich. June 10, 1010) ("The sentence six 'good cause' requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision.")); *Suarez v. Comm'r of Soc. Sec.*, No. 3:16-CV-02732, 2018 WL 2059553, at *9 (D.N.J. May 3, 2018) ("Plaintiff has made no showing of good cause for failure to produce the evidence to the ALJ, and it will not be considered here."). Although Plaintiff is now proceeding *pro se*, she was represented by counsel through at least a portion of the administrative proceedings. Plaintiff has made no attempt to explain why neither she nor her attorney was able to obtain a medical opinion or MRFC from either Nurse Bishop or another medical provider prior to the date of the ALJ's decision. *See generally Plaintiff's Letter Brief*, ECF No. 16. Similarly, Plaintiff has pointed to no request for an extension of time for submitting the equivalent of this evidence to the ALJ. *See id.*

For all these reasons, Plaintiff's apparent request for remand pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence is not well taken.

**B.    RFC**

Plaintiff next appears to argue that the ALJ erred in determining Plaintiff's physical and mental RFC. *See Plaintiff's Letter Brief*, ECF No. 16, p. 1 (describing physical and mental impairments that affect her ability to work). Plaintiff's arguments are not well taken.

A claimant's RFC is the most the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, and occasionally stoop, crouch, kneel, and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, and wetness or humidity, as well as even moderate exposure to irritants such as fumes, odors, dust, and gases. The claimant is limited to work involving simple, routine tasks, in a low-stress job, which is defined as having only occasional decision-making required and only occasional changes in the work setting. She should only occasionally interact with the public.

R. 26. In making this determination, the ALJ detailed years of record evidence relating to her physical impairments, including, *inter alia*, examinations by an interventional neurologist in January 2016 that revealed muscle spasm, tenderness, and restricted range of motion, but negative straight-leg raising; Plaintiff's testimony that she had not had any injections or other interventions for pain except brief chiropractic treatment in 2016, despite an October 2016 x-ray that showed mild bilateral shoulder degenerative joint disease; a November 2016 consultative examination by Dyana Aldea, M.D., that revealed a mildly antalgic gait but an ability to walk heel-toe, difficulty bending and inability to squat, a restricted range of motion of the lumbar spine with pain and muscle spasm, as well as mild thoracolumbar scoliosis, but full range of motion of the cervical spine and negative straight-leg raising, 5/5 grip and pinch strength, 5/5 major muscle strength everywhere except in the left hip which was 4+/5, tenderness to palpation of the bilateral knees and feet, mildly diminished sensation in the bilateral feet, absent reflexes but normal muscle tone; Dr. Aldea's opinions, to which the ALJ assigned "great weight," that Plaintiff had limitations in her ability to bend, squat, and climb, but that she could stand and walk for reasonable amounts of time; podiatry records from Minh Cao, D.P.M., which showed generalized tenderness to the feet, with good range of motion; the findings by Plaintiff's primary care provider which included paraspinal muscle tenderness but full range of motion; an October 2017 evaluation which revealed 5/5 strength and normal muscle bulk and tone, with no tremor or sensory loss, and intact coordination and gait; the October 2017 consultative examination by Juan Carlos Cornejo, M.D., who observed that Plaintiff could get on and off the table, dress herself, and appeared comfortable in a seated position, but who observed no joint deformity, warmth, or instability, despite mild swelling of the left hand and tenderness of the bilateral elbows and fingers, and who noted 5/5 pinch, grip, and muscle strength in the upper extremities,

normal lower extremity strength, and fully intact sensation, but decreased cervical range of motion except that Plaintiff was able to rotate her neck fully when distracted, decreased lumbar range of motion with no pain, negative straight-leg raising, a normal gait, an ability to walk on her heels and toes and squat without difficulty; an x-ray of the cervical spine that showed malalignment and moderate disc-space narrowing at C4-C5; Dr. Cornejo's opinion, to which the ALJ assigned "substantial weight," that Plaintiff might have difficulty with frequent bending and turning her neck, and with prolonged standing and walking, bending, squatting, and kneeling, but that she would be able to sit for a reasonable amount of time and would be able to do light or sedentary work; an April 9, 2018 electromyogram that showed lumbosacral radiculopathy; and October 20, 2017, MRIs of the cervical and lumbar spine that revealed disc herniations and multilevel facet inflammation. R. 27–31. The ALJ further explained the RFC physical limitations as follows:

> I considered the objective and clinical findings regarding the claimant's degenerative disc disease, osteoarthritis, and rheumatoid arthritis in assessing a residual functional capacity for light work with frequent balancing, but only occasional other postural activities, and no climbing of ladders, ropes, and scaffolds. The claimant should also avoid concentrated exposure to extreme temperatures and wetness, which could exacerbate her symptoms. Nonetheless, her typically normal strength and independent gait do not support the additional limitations alleged.
>
> The claimant's asthma also would not cause limitations beyond those in the residual functional capacity above. Initially, the claimant did not mention asthma as a reason she could not work at the hearing, and there is no evidence to suggest worsening of this impairment since she last worked. Pulmonologist Nancy Higgins, M.D., who first saw the claimant for a sleep evaluation in August 2015, observed clear lungs, and the claimant denied significant dyspnea on exertion (Ex. 1F/7-8). On follow-up in September 2015, the claimant again had clear lungs, and she denied any exacerbations in the last six weeks (Ex. 1F/3). Dr. Aldea did not observe any abnormalities on lung examination in November 2016 (Ex. 8F/2-3). The claimant had consultative pulmonary function testing in September 2017, which was consistent with a restrictive lung pattern (Ex. 19F/1-2). I considered the claimant's history of asthma in assessing a residual functional capacity for light work with no concentrated exposure to extreme temperatures, wetness, or humidity, and not even

moderate exposure to pulmonary irritants. However, the claimant's conservative treatment for asthma is not consistent with additional respiratory limitations.

R. 29.

The ALJ also detailed years of record evidence relating to Plaintiff's mental impairments, including, *inter alia*, a December 2016 psychological consultative examination that revealed over-productive speech and tangential and circumstantial thinking as well as limited delayed recall, but an ability to spell "world" forward and backward and complete serial sevens and serial threes; an October 2017 evaluation for dementia which revealed intact abilities in naming, repetition, reading, and writing, and a score of 29/30 on a mini mental status examination; a November 2017 appointment to which Plaintiff drove herself and at which Plaintiff stated that she was independent with self-care; a mental status examination that revealed a 0/3 delayed recall but an ability to count backwards from 20 and to spell "world" forward; and a comprehensive assessment in April 2018 that included a finding of impaired recent memory and serial threes. R. 29–30. The ALJ explained that he "considered these clinical findings, as well as the claimant's history and subjective complaints, in assessing a residual functional capacity for work involving simple, routine tasks, in a low-stress job, with only occasional interaction with the public. However, the normal findings on dementia evaluation are inconsistent with the additional limitations the claimant alleged." R. 30; *see also* R. 29 (stating that Plaintiff's "psychological impairments would not prevent her from sustaining work involving simple, routine tasks, in a low-stress job, with only occasional interaction with the public"). The ALJ also gave "considerable weight" to the reviewing state agency reviewing psychological consultants who found that Plaintiff could understand and execute simple instructions, sustain concentration, persistence, and pace, and relate and adapt in a work-like setting. R. 30. The ALJ went on to explain his RFC findings as follows:

> In sum, the above residual functional capacity assessment is supported by the medical evidence of record, as well as the medical opinion evidence. Specifically, back and widespread joint pain from degenerative disc disease, osteoarthritis, and rheumatoid arthritis could reasonably limit the claimant to sedentary work with frequent balancing and occasional other postural activities, but no climbing of ladders, ropes, and scaffolds. Furthermore, the combination of her impairments, including asthma, would require the claimant to avoid concentrated exposure to extreme temperatures and humidity, as well as even moderate exposure to pulmonary irritants. The claimant's psychological impairments would restrict her to work involving simple, routine tasks, in a low-stress job, with only occasional interaction with the public. The claimant's hypertension, diabetes, and GERD have been considered, but these conditions do not cause additional or significant functional limitations.

R. 31. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff apparently challenges this determination, complaining that she has "been unable to keep a job ever since due to my declining health and severe mental health conditions." *Plaintiff's Letter Brief*, ECF No. 16, p. 1 (describing impact of various physical and psychological impairments). However, "[s]ubjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Moreover, Plaintiff, who bears the burden at step four of the sequential evaluation process, *see Smith*, 631 F.3d at 634, does not identify—nor can the Court locate—any specific functional limitations flowing from her physical and mental conditions that the ALJ failed to accommodate in the RFC. *See Plaintiff's Letter Brief*, ECF No. 16, p. 1. Therefore, Plaintiff's argument in this regard will not serve as a basis for undermining the RFC found by the ALJ. *See Pickerin v. Colvin*, No. 14-6130, 2016 WL 5745103, at *5 (D.N.J. Sept. 30, 2016) (affirming the ALJ decision where "Plaintiff does not offer any specific limitations that the ALJ should have included in the RFC assessment . . . [and b]ecause it is

Plaintiff's burden to show that the ALJ's finding of residual functional capacity was not supported by substantial evidence, and Plaintiff has not identified any specific error").

In short, the Court concludes that the ALJ's findings regarding Plaintiff's RFC enjoy substantial support in the record.

## V. CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 7, 2022                                  *s/Norah McCann King*
                                                   NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE